IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICK DAVE DESHON,

                Petitioner,                   No. 2:11-cv-1677 KJN P

     vs.

MATTHEW CATE, etc.,

                Respondent.        ORDER

_____/

I. Introduction

        Petitioner is a former state prisoner, proceeding through counsel, and is currently on parole. Both parties consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c).

        Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. Petitioner challenges his conviction on charges of theft, and was sentenced to five years in state prison on May 15, 2009. Petitioner alleges that errors in the jury instructions misstated California law and prevented the jury from considering petitioner's affirmative defense, in violation of petitioner's due process rights. After careful review of the record, this court concludes that the petition should be denied.

////

II.  Procedural History

On January 12, 2009, petitioner was charged with petty theft with prior convictions for grand theft.  (Clerk's Transcript ("CT") at 40-41.)  The information also alleged that petitioner had served two prior prison terms following felony convictions.  (CT at 41.)  Prior to trial, the parties stipulated that petitioner suffered a prior conviction for a theft offense resulting in at least one day in custody.  (CT at 54; Reporter's Transcript ("RT") at 58-59.)

On March 31, 2009, the jury convicted petitioner of petty theft.  (CT at 62-63.)  In a separate proceeding, petitioner admitted that he had served two separate prior prison terms. (CT at 63; RT at 191-93.)  Petitioner was sentenced to five years in state prison.  (CT at 121-23.)

Petitioner appealed the conviction, and on June 7, 2010, the California Court of Appeal, Third Appellate District, affirmed the judgment.  (LD 4.)

Petitioner filed a petition for review in the California Supreme Court on July 14, 2010.  (LD 5.)  The California Supreme Court denied the petition without comment on September 15, 2010.  (LD 6.)

Petitioner filed the instant petition on June 20, 2011.  (Dkt. No. 1.)

III.  Facts[1]

The opinion of the California Court of Appeal contains the following factual summary of petitioner's offenses:

> The underlying circumstances are not complex.  The clerk in a convenience store watched [petitioner] collect various snacks and an 18-pack of beer and then walk out the door without paying for them.  After locking up the cash register, the clerk intercepted him outside and ordered him to stop.  The clerk took a step back when [petitioner] dropped everything on the ground, fearing that [petitioner] might take a swing at him, but [petitioner] only made "an irritated growl like I was bothering him" without saying anything else.  [Petitioner] walked away; the clerk collected the merchandise, went back into the store, and called 911. Deputies responded about five minutes later.  After a brief search of the

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Deshon, No. C061941 (June 7, 2010), a copy of which was lodged by respondent as LD 4 on November 21, 2011.

area, they took the clerk to a motorcycle shop next door, where he identified the detained [petitioner] as the shoplifter.

[Petitioner] had an unsteady gait and the odor of alcohol about him, his speech was slightly slurred and his eyes were "glossy and bloodshot," but he seemed able to walk and talk. There also were marks on [petitioner's] face. The arresting deputy thought [petitioner] was sufficiently drunk that he posed a danger to himself or others. [Petitioner] had two 18-packs of beer with him in the parking lot; two or three cans were missing. He said he had bought them at a supermarket two to three miles down the road, and had paid $40 for them. He denied ever being in the convenience store, and said he was sitting next to the motorcycle shop because he wanted a quiet place to drink his beer.

[Petitioner] testified. A friend had bought a gallon of vodka the morning of the shoplifting, and he and [petitioner] drank most of it by late afternoon before they walked to a nearby park. When someone questioned him about his ankle monitor, [petitioner] admitted being a registered sex offender. One of the other park users came at [petitioner] aggressively, saying he did not want [petitioner's] type around the park. When [petitioner] objected to the man's demands that he leave, the man began to punch and body-slam [petitioner]. [Petitioner] incurred scrapes to his head and bruised ribs as a result. The last thing [petitioner] recalled before the deputy found him in the parking lot of the motorcycle store was walking away from the park across a bridge. He did not have any independent recollection of the shoplifting incident later that evening.

After [petitioner] testified, defense counsel requested an instruction on involuntary unconsciousness based on the blows to his head. The court ruled that it would grant the request for an instruction on unconsciousness; defense counsel assented to the text of the proposed instruction. Defense counsel also assented to the text of a proposed instruction on voluntary intoxication.

Consequently, the court instructed the jury as follows with regard to these two instructions: "To prove that the [petitioner] is guilty of [petty theft], the People must prove that: [¶] . . . [¶][w]hen the [petitioner] took the property, he intended to deprive the owner of it permanently. . . . [¶] . . . [¶] You may consider evidence ... of the [petitioner's] voluntary intoxication only in a limited way. You may consider that evidence only in deciding . . . *whether the [petitioner] acted with an intent to permanently deprive the owner of the property.*" (Italics added.) After defining voluntary intoxication, the instructions reasserted that "the People have the burden of proving beyond a reasonable doubt that the [petitioner] acted with the intent to permanently deprive the owner of [the] property. If the People have not met this burden, you must find the [petitioner] not guilty of theft. *You may not consider evidence of*

*voluntary intoxication for any other purpose*.”  (Italics added.)
“The [petitioner] is not guilty of theft if he acted while legally
unconscious.  Someone is legally unconscious when he is not
conscious of his actions . . . even though able to move.
Unconsciousness may be caused by a blow to the head.  *However,*
*voluntary intoxication causing unconsciousness is not a defense,*
*although [ ] you may consider intoxication in determining whether*
*the [petitioner] formed the specific intent to permanently deprive*
*the owner of property*.”  (Italics added.)

    In his closing argument, the prosecutor first argued that
[petitioner] was not drunk enough to prevent him from forming an
intent to deprive the convenience store permanently of property.
“[P]eople do stupid things when they drink.  It doesn't mean they
don't intend to do it at the time.  There's a difference between an
effect on somebody's judgment and somebody who is completely . .
. passed out or in a complete stupor . . . where they can't form
intentions.”  The prosecutor relied on evidence that [petitioner]
“was able to navigate his way up . . . from . . . where . . . he got the
other two 18-packs of beer. . . .  It's about 3/4 of a mile away.  The
[petitioner] had the cognitive ability to locate a store where alcohol
is . . . [and] locate the alcohol in the store[, and h]e was able to use
the rest room”; the “cagey” manner in which [petitioner] attempted
to evade the clerk in the convenience store; and his recognition that
he had to leave the scene of his actions.  Turning to the subject of
an unconsciousness defense, the prosecutor asserted that it must
have its basis in a blow to the head and not voluntary intoxication;
“*[s]o if the [petitioner] got so drunk that he was unconscious and*
*is walking through that store and stealing, that's not a defense*.”
(Italics added.)  The prosecutor cited [petitioner's] ability to
respond coherently to questioning immediately after the shoplifting
as evidence he was conscious during the shoplifting.

    Defense counsel initially connected the relevance of
[petitioner's] aggravated level of inebriation to the specific intent
of depriving an owner of property.  He then cautioned the jury that
unconsciousness does not require a stupor, merely a lack of an
awareness of acting (citing the example of sleepwalkers), and
pointed out that [petitioner] only growled when the clerk stopped
him, and could not manage to get any farther than the wall of the
neighboring business.

    In rebuttal, the prosecutor again distinguished between the two
theories.  He reiterated that [petitioner] was not in any sort of
walking coma from the scrapes on his head, nor was he so drunk he
could not form the intent to steal.

(People v. Deshon, slip op. at  2-6.)

////

1   IV.  Standards for a Writ of Habeas Corpus

2                   An application for a writ of habeas corpus by a person in custody under a

3   judgment of a state court can be granted only for violations of the Constitution or laws of the

4   United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

5   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

6   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

7                   Federal habeas corpus relief is not available for any claim decided on the merits in

8   state court proceedings unless the state court's adjudication of the claim:

9                   (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
10                  determined by the Supreme Court of the United States; or

11                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
12                  State court proceeding.

13  28 U.S.C. § 2254(d).

14                  Under section 2254(d)(1), a state court decision is "contrary to" clearly

15  established United States Supreme Court precedents if it applies a rule that contradicts the

16  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

17  indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different

18  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

19  (2000)).

20                  Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21  habeas court may grant the writ if the state court identifies the correct governing legal principle

22  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24  simply because that court concludes in its independent judgment that the relevant state-court

25  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

26  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

                                                    5

1   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

2   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

3   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

4   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

5   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

6            The court looks to the last reasoned state court decision as the basis for the state

7   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

8   decision, "and the state court has denied relief, it may be presumed that the state court

9   adjudicated the claim on the merits in the absence of any indication or state-law procedural

10  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

11  overcome by a showing that "there is reason to think some other explanation for the state court's

12  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

13           Where the state court reaches a decision on the merits but provides no reasoning

14  to support its conclusion, the federal court conducts an independent review of the record.

15  "Independent review of the record is not de novo review of the constitutional issue, but rather,

16  the only method by which we can determine whether a silent state court decision is objectively

17  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

18  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

19  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

20  determine what arguments or theories supported or, . . . could have supported, the state court's

21  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

22  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

23  786.

24  ////

25  ////

26  ////

1  V.  <u>Voluntary Intoxication</u>

2         A.  <u>State Court Opinion</u>

3         The last reasoned rejection of this claim is the decision of the California Court of

4  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

5  this claim as follows:

6           Seizing upon the "strikingly broad language" we quoted above in
    the instructions that "voluntary intoxication causing
7    unconsciousness is 'not a defense,'" and isolating that part of the
    prosecutor's argument in which he asserted, "[s]o if the [petitioner]
8    got so drunk that he was unconscious and is walking through the
    store and stealing, that's not a defense," [petitioner] posits a
9    strained reading under which the jurors would believe that they
    could consider intoxication but could not base an acquittal on it.
10   As a result, he was deprived of a defense in violation of his rights
    under the federal Constitution.

11
          We first reject the People's oft-repeated suggestion that
12   [petitioner] invited the error because trial counsel acquiesced in the
    wording of the instruction.  The doctrine of invited error, however,
13   applies only where the record allows us to impute an exercise of
    reasoned tactics to defense counsel rather than ignorance or
14   mistake in taking a deliberate action, and we do not seize upon
    some conceivable tactical purpose that was not in fact a part of
15   defense counsel's considerations.  (<u>People v. Coffman and Marlow</u>
    (2004) 34 Cal.4th 1, 49; <u>People v. Boyette</u> (2002) 29 Cal.4th 381,
16   438; <u>People v. Bunyard</u> (1988) 45 Cal.3d 1189, 1234; <u>People v.</u>
    <u>Wickersham</u> (1982) 32 Cal.3d 307, 333-334.)  If the instructions
17   suffered the flaw [petitioner] now proposes, we could not impute
    any exercise of reasoned tactics to support it.  We therefore cannot
18   find invited error.

19         It is true, as [petitioner] points out, that <u>People v. Spencer</u> (1963)
    60 Cal.2d 64 asserted that "trial jurors should not be required to
20   make . . . an intricate analysis" (<u>Spencer</u>, <u>supra</u>, at p. 87) of
    instructions that correctly explained 1) an offense required specific
21   intent, 2) drunkenness is not of itself a defense, and 3) drunkenness
    could nonetheless be taken "'into consideration'" in determining
22   whether a [petitioner] had the necessary intent for a crime (<u>id.</u> at
    pp. 86-87 & fn. 14 [finding error to give such instructions with
23   crimes of specific intent, but no prejudice in the case before it
    because evidence of drunkenness insufficient] ).

24
          However, the governing standard under which we presently
25   evaluate a claim of instructional error is whether it is reasonably
    likely (in light of the entire charge) that a jury would have given
26   [petitioner's] suggested interpretation to an instruction.  (<u>Boyde v.</u>

                                    7

1     California (1990) 494 U.S. 370, 378, 380 [108 L.Ed.2d 316];
    People v. Kelly (1992) 1 Cal.4th 495, 525.)  We thus do not
2     concern ourselves with whether a particular meaning can be
    "teased out" of instructions.  (People v. Avena (1996) 13 Cal.4th
3     394, 417.)  In determining the reasonable likelihood of a suggested
    interpretation, we may consider the arguments of counsel.  (Kelly,
4     supra, 1 Cal.4th at pp. 526-527; People v. Cuevas (2001) 89
    Cal.App.4th 689, 699.)

5

6        [Petitioner's] instructional interpretation here is unreasonable.
    Both the highlighted instruction and argument make the proper
    point that the defense of unconsciousness must be the result of the
7     alleged blows in the park, not voluntary drunkenness.  No
    reasonable juror, having also been instructed that voluntary
8     drunkenness can negate the necessary specific intent for theft,
    would interpret the prohibition against use of voluntary
9     drunkenness causing unconsciousness in support of a defense as
    prohibiting consideration of whether drunkenness in fact prevented
10     [petitioner] from forming a specific intent.  We do not find any
    error.

11

12 (People v. Deshon, slip op. at  6-8.)

13       B.  Legal Standards

14       To obtain federal collateral relief for errors in the jury charge, a petitioner must

15 show that the ailing instruction by itself so infected the entire trial that the resulting conviction

16 violates due process.  See Estelle, 502 U.S. at 72; see also Donnelly v. DeChristoforo, 416 U.S.

17 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable,

18 erroneous or even "universally condemned," but that it violated some [constitutional right].'").

19 The instruction may not be judged in artificial isolation, but must be considered in the context of

20 the instructions as a whole and the trial record.  See Estelle, 502 U.S. at 72.  In other words, the

21 court must evaluate jury instructions in the context of the overall charge to the jury as a

22 component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citation

23 omitted).

24       In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors

25 could or would have understood the instruction as a whole; rather, the court must inquire whether

26 there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way

that violates the Constitution.  See Estelle, 502 U.S. at 72 & n.4; Boyde, 494 U.S. at 380; see,

e.g., Ficklin v. Hatcher, 177 F.3d 1147, 1150-51 (9th Cir. 1999) (harmless error when certain that

jury did not rely on constitutionally infirm instruction); Waddington v. Sarausad, 555 U.S. 179

(2009) (even assuming jury instructions in murder prosecution were ambiguous as to elements

required for accomplice liability, state appellate court reasonably applied federal law.)  For

instructional error to amount to a due process violation, petitioner must show both that the

instruction was defective, and that there was a "reasonable likelihood that the jury applied the

instruction in a way that relieved the state of its burden of proving every element of the crime

beyond a reasonable doubt." Id. at 190-91.

　　　　In addition, it is well established that a criminal defendant is entitled to adequate

instructions on the defense theory of the case.  Conde v. Henry, 198 F.3d 734, 739 (9th Cir.

2000).  Failure to instruct on the theory of defense violates due process if "'the theory is legally

sound and evidence in the case makes it applicable.'"  Clark v. Brown, 450 F.3d 898, 904-05 (9th

Cir. 2006) (quoting Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)).  However, a

defendant is not entitled to have jury instructions raised in his or her precise terms where the

given instructions adequately embody the defense theory.  United States v. Del Muro, 87 F.3d

1078, 1081 (9th Cir. 1996).

　　　　Finally, a determination that there is a reasonable likelihood that the jury has

applied the challenged instruction in a way that violates the Constitution establishes only that an

error has occurred.  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  If an error is found,

"[t]he court must find that the error, in the whole context of the particular case, had a substantial

and injurious effect or influence on the jury's verdict."  Id., at 146-47; see Brecht v. Abrahamson,

507 U.S. 619, 637 (1993).

　　　　C.  Analysis

　　　　Petitioner was charged with a specific intent crime, theft by larceny, California

Penal Code § 484.  (CT 84.)  The trial court properly instructed the jury with the legal definitions

of this crime[2] and the applicable mental state.  (CT 77-78, 84.)  The jury was also instructed with the pattern jury instruction regarding the required concurrence of act and specific intent with regard to the theft.  (CT 80.)

Two jury instructions were given pertinent to petitioner's defense, and which form the basis for petitioner's challenge herein.  The voluntary intoxication instruction stated:

> You may consider evidence, if any, of the [petitioner's] voluntary intoxication only in a limited way.  You may consider that evidence only in deciding whether the [petitioner] acted with the intent to permanently deprive the owner of his or her property.
>
> A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.
>
> In connection with the charge of theft, the People have the burden of proving beyond a reasonable doubt that the [petitioner] acted with the intent to permanently deprive the owner of his or her property.  If the People have not met this burden, you must find the [petitioner] not guilty of theft.

_____

[2]  The jury instruction read as follows:

The [petitioner] is charged in Count One with petty theft in violation of Penal Code section 484.

To prove that the [petitioner] is guilty of this crime, the People must prove that:

1.  The [petitioner] took possession of property owned by someone else, including a business or corporation;

2.  The [petitioner] took the property without the owner's consent;

3.  When the [petitioner] took the property he intended to deprive the owner of it permanently;

AND

4.  The [petitioner] moved the property, even a small distance, and kept it for any period of time, however brief.

For petty theft, the property taken can be of any value, no matter how slight.

(CT 84.)

1          You may not consider evidence of voluntary intoxication for any
2     other purpose.

3    (CT 85.)  This voluntary intoxication instruction tracks the language of pattern instruction

4    CALCRIM 3426.[3]

5          With regard to the defense of unconsciousness, the jury was instructed as follows:

6          The [petitioner] is not guilty of theft if he acted while legally
     unconscious.  Someone is legally unconscious when he or she is
7     not conscious of his actions.  Someone may be unconscious even
     though able to move.  Unconsciousness may be caused by a blow
8     to the head.  However, voluntary intoxication causing
     unconsciousness is not a defense, although you may consider
9     intoxication in determining whether the [petitioner] formed the
     specific intent to permanently deprive the owner of property.
10
          The People must prove beyond a reasonable doubt that the
11     [petitioner] was conscious when he acted.  If there is proof beyond
     a reasonable doubt that the [petitioner] acted as if he were
12     conscious, you should conclude that he was conscious.  If,
     however, based on all the evidence, you have a reasonable doubt
13     that he was conscious, you must find him not guilty.

14    (CT 85.)  This unconsciousness instruction tracks the language of pattern instruction CALCRIM

15    3425, except that the trial court inserted the sentence:  "However, voluntary intoxication causing

16    unconsciousness is not a defense, although you may consider intoxication in determining whether

17    the [petitioner] formed the specific intent to permanently deprive the owner of property."  (CT

18    85.)

19          Petitioner contends that the language, "voluntary intoxication causing

20    unconsciousness is not a defense," constitutes plain error because it erroneously "stated that the

21    central defense contention -- namely, that petitioner had been unconscious at the time he

22    committed the theft -- was 'not a defense.'"  (Dkt. No. 1 at 20.)  Petitioner contends that this

23    erroneous language deprived petitioner of his defense because voluntary intoxication can be a

24
          [3]  CALCRIM 3426 also provides for the inclusion of the optional sentence "[Voluntary
25    intoxication is not a defense to _____ <insert general intent offense[s]>.]  This
     optional sentence was not included in the voluntary intoxication instruction given to the jury
26    here.

11

1   complete defense to the crime of theft because it negates specific intent.  Petitioner argues that

2   the prosecution reinforced this error during closing argument by focusing on an argument that "it

3   is not a defense in this case that he was unconscious as a result of voluntary intoxication."  (Dkt.

4   No. 1 at 19, citing RT 169.)

5           The state court did not find that the jury instruction was incorrect, ambiguous, or

6   that the challenged language constituted plain error.  Rather, the state court applied federal law

7   and found that it was not reasonably likely, in light of the entire charge, that a jury would have

8   interpreted the instructions in the manner petitioner suggests.  This court agrees.  The added

9   sentence, in its entirety, made clear that while voluntary intoxication causing unconsciousness

10  was not a defense, the jury was allowed to consider intoxication in determining whether

11  petitioner formed the specific intent to permanently deprive the owner of property.  Petitioner's

12  focus on one part of the sentence, "voluntary intoxication causing unconsciousness is not a

13  defense," and his attempt to recast it in terms of "voluntary intoxication is not a defense" is an

14  unreasonable interpretation of the court's added sentence or the jury instructions as a whole.  The

15  entire sentence added by the trial court did not negate the defense of unconsciousness related to

16  the assault petitioner suffered prior to the theft at issue.  The court properly instructed on

17  voluntary intoxication and how, if the jury found petitioner was voluntarily intoxicated, it would

18  negate the specific intent required to find petitioner guilty.  Also, the addition of the sentence in

19  the unconsciousness instruction did not eviscerate petitioner's voluntary intoxication defense, but

20  simply instructed the jury that they could not consider his voluntary intoxication in connection

21  with the unconsciousness defense.

22          Petitioner claims that defense counsel's "sole defense argument was that

23  petitioner had been essentially unconscious while he was in the AM/PM, which counsel

24  supported with testimony that petitioner had consumed roughly half a gallon of vodka in the

25  hours before this incident and been beaten immediately before heading to the store."  (Dkt. No. 1

26  at 24.)  In his reply, petitioner contends that the core theory of petitioner's defense was that

1    petitioner was "unconscious at the time of the crime due to a *combination* of voluntary

2    intoxication and having been violently beaten." (Dkt. No. 21 at 6, emphasis added.)  Thus,

3    petitioner appears to argue that defense counsel contended that voluntary intoxication supported

4    the unconsciousness defense, as well as his position that petitioner's state of intoxication negated

5    the specific intent required to find petitioner guilty of theft.

6            However, petitioner's view of the defense theory is belied by the record.  First, the

7    sentence added to the unconsciousness jury instruction makes clear that the trial court did not

8    allow a defense theory that petitioner's alleged unconsciousness was caused by his voluntary

9    intoxication.  Petitioner's view of the defense theory appears to be unsupported by California

10   law.[4]  (CT 85; see fn.4.)  Second, review of defense counsel's brief on the trial court's duty to

11   instruct on unconsciousness reflects no such reliance on a theory of voluntary intoxication.  (CT

12   59-60.)  Rather, defense counsel argued that petitioner's "complete inability to recall the events

13

---

14       [4] Unconsciousness is typically a complete defense to a crime except when it is caused by
     voluntary intoxication.  People v. Heffington, 32 Cal. App. 3d 1, 8, 107 Cal. Rptr. 859 (1973).

15   Under California law, "unconsciousness, if not induced by voluntary intoxication, is a complete
     defense to a criminal charge."  People v. Halvorsen, 42 Cal.4th 379, 417, 64 Cal.Rptr.3d 721

16   (Cal.2007) (internal citations omitted).  Unconsciousness caused by voluntary intoxication is
     governed by California Penal Code section 22, rather than by section 26, and is only a partial

17   defense to a crime.  People v. Walker, 14 Cal. App. 4th 1615, 1621. 18 Cal. Rptr. 2d 431 (1993)
     (no error in refusing to instruct on unconsciousness when defendant was voluntarily under the

18   influence of drugs at the time of the crime); see also People v. Ochoa, 19 Cal. 4th 353, 423, 79
     Cal. Rptr.2d 408 (1998) ("if the intoxication is voluntarily induced, it can never excuse homicide.

19   Thus, the requisite element of criminal negligence is deemed to exist irrespective of
     unconsciousness, and a defendant stands guilty of involuntary manslaughter if he voluntarily

20   procured his own intoxication [citation].").  California Penal Code § 22(b) provides:

21                      Evidence of voluntary intoxication is admissible **solely** on the issue
                       of whether or not the defendant actually formed a required specific

22                      intent, or, when charged with murder, whether the defendant
                       premeditated, deliberated, or harbored express malice

23                      aforethought.

24   Id. (emphasis added).  Here, petitioner cites no legal authority for the proposition that, under
     California law, voluntary intoxication can form the basis for an unconsciousness defense to a

25   theft charge.  See also 1 Witkin, Cal. Crim. Law 3d (2000) Defenses, § 35 ("Voluntary
     intoxication is governed by P.C. 22, under which it is a partial defense that may negate a required

26   mental state, but, even if unconsciousness results, is not a complete defense under P.C. 26.")

1    in question" and the "blow to the head shortly before these events" overcame the presumption of

2    consciousness.  (CT 60.)  There is no mention of voluntary intoxication or facts supporting such

3    a theory in defense counsel's brief.  (CT 59-60.)  Third, the prosecution's opposition to the

4    unconsciousness instruction argued that petitioner testified that his inability to recall was based

5    on his alcohol intoxication rather than any "scrapes [petitioner] received in the fight."  (CT 69.)

6    The prosecution argued against expanding the mental states which constitute being unconscious,

7    noting a conflict in California courts over whether an unsound mental condition can form the

8    basis of a defense of unconsciousness.  (CT 70.)  The prosecution also argued that the legal

9    authority defense counsel relied on to expand the definition of "unconscious" was a "case which

10   would not extend the defense of unconsciousness to voluntary intoxication," citing People v.

11   Newton, 8 Cal. App. 3d 359, 376 (1970) (applying California Penal Code § 26, the court stated

12   "[w]here not self-induced, as by voluntary intoxication . . ., unconsciousness is a complete

13   defense to a charge of criminal homicide.").[5]  (CT 70.)  Fourth, despite defense counsel's

14   statement to the jury in closing argument that "there's only one issue here for you to decide" (RT

15   172), defense counsel argued the defense theory of unconsciousness (RT 174-76) separate from

16   the defense theory of voluntary intoxication (RT 176-77; 180).  During his argument on

17   unconsciousness, defense counsel made a passing reference to "staggering" and "passing out,"

18   (RT 174), but there is no discussion of facts supporting petitioner's claim of voluntary

19   intoxication; rather, the focus was the blows to the head petitioner allegedly suffered in the

20   assault prior to the theft at issue here.

21          For all of the above reasons, the record demonstrates the defense theory hinged on

22   an unconsciousness defense based on the blows to the head petitioner suffered prior to the theft,

23   and that the voluntary intoxication issue related solely to negating petitioner's specific intent as

24   to the theft charge.

25   _____

26          [5]  The Newton case was not cited in defense counsel's brief.  (CT 59-60.)

1    In addition, the state court's evaluation of the prosecution's closing argument is

2    supported by the record.  The prosecution appropriately argued that the unconsciousness defense

3    must be based on the alleged blows petitioner suffered prior to the theft, not as a result of his

4    voluntary intoxication.  In any event,

5    arguments of counsel generally carry less weight with a jury than
     do instructions from the court.  The former are usually billed in

6    advance to the jury as matters of argument, not evidence, and are
     likely viewed as the statements of advocates; the latter, [the

7    Supreme Court has] often recognized, are viewed as definitive and
     binding statements of the law.

8

9    Boyde, 494 U.S. at 384.  Here, the jury was instructed that if the jury believed that the attorneys'

10   comments on the law conflicted with the court's instructions, the jury must follow the court's

11   instructions.  (CT 73.)  Further, the jury was instructed:  "Nothing that the attorneys say is

12   evidence.  In their opening statements and closing arguments the attorneys will discuss the case,

13   but their remarks are not evidence."  (RT 15-16.)  A jury is presumed to follow its instructions.

14   Richardson v. Marsh, 481 U.S. 200, 211 (1987).

15   Moreover, petitioner's reliance on Conde is unavailing.  First, Conde is not a

16   United States Supreme Court case.  Id., 198 F.3d at 738.  Second, Conde was evaluated under the

17   less stringent pre-AEDPA standards.  Conde, 198 F.3d at 738 ("AEDPA's restrictions do not

18   apply because the original petition was filed before the effective date of AEDPA").  As explained

19   above, a federal writ of habeas corpus will issue only when the state court decision is "contrary

20   to, or involved an unreasonable application of, clearly established federal law as determined by

21   the Supreme Court of the United States."  28 U.S.C. § 2254(d).  A federal habeas court "can no

22   longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

23   precedent on a federal Constitutional issue."  Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.

24   2000).  Accordingly, Conde does not dictate the result in this case.

25   In any event, the facts in Conde are distinguishable from the facts of this case.

26   Here, unlike the situation in Conde, petitioner's counsel was allowed to argue his defenses that

15

1   petitioner lacked the intent to steal because he was intoxicated or was unconscious based on the

2   earlier blows to petitioner's head.  (RT 174-77.)  The instructions given clearly and properly

3   instructed the jury that voluntary intoxication could negate specific intent, and that the jury could

4   consider whether petitioner was unconscious at the time of the theft due to the earlier blows to

5   the head.  Further, unlike Conde, the jury instructions at petitioner's trial did not relieve the jury

6   from finding every element of the offense.  Accordingly, Conde is not dispositive and any trial

7   court's jury instruction error is subject to harmless error analysis.  Neder v. United States, 527

8   U.S. 1, 4 (1999) (state court's error in giving a jury instruction that omitted an element of the

9   offense subject to harmless error analysis).[6]

10          Here, the language of the jury instructions was not ambiguous or contradictory.

11  The sentence added to the unconsciousness instruction was consistent with the trial judge's

12  decision that voluntary intoxication was not a defense to unconsciousness, yet it also made clear

13  that the jury could consider voluntary intoxication as it related to specific intent.  This court finds

14  there is no reasonable likelihood that the jury applied the challenged instructions in a way that

15  violated the Constitution.  See Boyde, 494 U.S. at 380.  In Boyde, the Supreme Court noted that

16  when evaluating the reasonable likelihood standard, jurors "do not sit in solitary isolation booths

17  parsing instructions" but instead consider them "with commonsense understanding of the

18  instructions in the light of all that has taken place at the trial likely to prevail over technical

19  hairsplitting."  Id., 494 U.S. at 380-81.  Petitioner's argument relies on parsing a portion of the

20  sentence added to the unconscious instruction in an effort to demonstrate Constitutional error.

21

22      [6] Similarly, petitioner's reliance on People v. Spencer and United States v. Sneezer are
    also unavailing.  In People v. Spencer, 60 Cal.2d 64, 88 (1963), the court found there was

23  insufficient evidence to support a sua sponte intoxication jury instruction when the defendant had
    drunk some beer and whiskey and was "pretty well plastered."  Id.  The state court was

24  concerned with additional language explaining the policies underlying the law's refusal to
    recognize voluntary intoxication as a defense.  Id.  In Sneezer, the lower court refused to instruct

25  the jury with a voluntary intoxication instruction, but the Ninth Circuit found that because
    attempted sexual abuse is a specific intent crime, the jury should be so instructed.  United States

26  v. Sneezer, 983 F.2d 920, 922 (9th Cir. 1992).  Here, the jury was properly instructed on the
    defense theories of voluntary intoxication and unconsciousness.

1  Neither a common sense reading of the instructions, nor a review of the record, supports such a

2  position.

3          The overall charge to the jury included proper instructions on theft and the

4  requirement that the jury must find petitioner formed the specific intent to permanently deprive

5  the owner of property.  (CT 77-78, 80, 84.)  The unconsciousness instruction properly instructed

6  the jury as to how to apply the defense of unconsciousness, informed the jury they could not

7  consider intoxication as a defense to unconsciousness, but reminded the jury they could consider

8  intoxication in determining whether petitioner formed the specific intent to permanently deprive

9  the owner of property.  (CT 85.)  Thus, there is no reasonable likelihood that the jury applied the

10  challenged instruction in a way that violates the Constitution.  The state court properly applied

11  Boyde in rejecting petitioner's claim.  Therefore, the state court's decision was neither contrary

12  to nor an unreasonable application of clearly established United States Supreme Court

13  jurisprudence, nor was it based on an unreasonable determination of the facts.  For that reason,

14  petitioner is not entitled to federal habeas corpus relief.

15  VI.  Conclusion

16          For all of the above reasons, the undersigned denies petitioner's application for a

17  writ of habeas corpus.

18          Before petitioner can appeal this decision, a certificate of appealability must issue.

19  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28

20  U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

21  constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

22  appealability indicating which issues satisfy the required showing or must state the reasons why

23  such a certificate should not issue.  Fed. R. App. P. 22(b).

24          For the reasons set forth above, the undersigned finds that petitioner has not made

25  a showing of a substantial showing of the denial of a constitutional right.

26  ////

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied; and

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

DATED:  October 18, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

desh1677.157